## PATTERSON vs. J. & J. McCLANAHAN.

1. Although instructions asked by a party and refused by the circuit court assert correct legal principles, according to the facts assumed by them, yet if the jury by their verdict have negatived the hypothesis upon which the instructions were based, the supreme court will not interfere with the judgment.

2. Where the objection to evidence goes to the *sufficiency* of the proof, and not to its *competency* or *relevancy*, it is matter for the determination of the jury.

## ERROR to Callaway Circuit Court.

### STATEMENT OF THE CASE.

This cause was commenced in the Callaway circuit court by plaintiff, by petition founded on a promissory note for $250 00, dated August 25th, 1848, upon twelve months time, payable to Benjamin F. Watkins, and by him assigned to plaintiff. Defendants filed their answer at the October term, 1849, and set up therein the following defence to the merits of the action, to-wit: "that the promissory note sued on, was given upon the purchase by the defendants, from the payee of the note, on or about the 25th day of August, 1848, of Lewis and Johnson's atmospheric churn for the county of Boone in this State, and upon this sale the

Patterson vs. J. & J. McClanahan.

payee falsely and fraudulently represented to the defendants that the churn would, with cream, in good order, turn out a first rate article of butter in five or ten minutes, and with new milk in fifteen or twenty minutes, and was superior to any other churn; and the defendants, relying upon these representations, made the purchase, when in truth, the churn would not, with cream in good order, turn out a good article of butter in five or ten minutes, nor with new milk in fifteen or twenty minutes,·nor was it superior to any other churn, but was useless and unfit for the purpose for which it was intended—inferior to the churn in common use and of no value." In their answer, defendants further stated that they file with their answer, the bill of sale of the churn made to the defendants by the description of John McClanahan & Co. A trial was had at the April term, 1850, at which the cause was dismissed as to Hance and Griffith, and the jury empannelled in the cause found for defendants.

At the trial the plaintiff gave the note in evidence and testimony to establish the assignment thereof by Watkins to plaintiff, when plaintiff rested his case. Defendants introduced witness Parker, who stated that about the time of the date of the note, Watkins showed him the note, and asked him about the solvency of the makers, and that about the same time he showed witness the bill of sale executed to John McClanahan & Co., and acknowledged the signature to be his, and witness attested it. Witness had never seen Watkins in Fulton before or since, and that defendants lived there. Defendants offered to read the bill of sale to the jury, but plaintiff objected, because defendants had not proven that the makers of the note composed the firm to whom the bill of sale was made. The court overruled the objection of plaintiff, and permitted the bill of sale to be read to the jury, to which the plaintiff excepted. Defendants showed by this witness, that before and about the time of the date of the note, he saw such a printed notice as the one shown witness, stuck up in Tuckers' tavern and on the ·corner of Henderson's store in town. The notice represented that the churn would, with cream in good order, turn out a first rate article of butter in five or ten minutes, and with new milk in fifteen or twenty. Defendants offered to read the printed notice in evidence, to the reading of which plaintiff objected, because the same would be evidence irrelevant, illegal, and not pertinent to ·the issue; but the objection was overruled by the court, who permitted the notice to be read to the jury, and the plaintiff excepted. Defendants offered to prove by witness that he heard Watkins make representations as to said atmospheric churn, similar to those contained in the notice, in the streets, stores and shops of the town, to the giving of which evidence plaintiff objected, but his objection was overruled by the court, and the plaintiff excepted. Witness heard Watkins in Tucker, Harris & Co.'s store represent what the churn would do, similar to and stronger than those contained in the notice—that Thomas Harris, D. M. Tucker, witness, and perhaps Wm. Tucker, were present. Witness heard Watkins make similar representations in Nolley's shop, witness, Nolley and Watkins being all that were present. Witness heard Watkins in various other places make representations as to the merits of said churn—does not remember who were present. Some of the conversations and representations were made before the sale, and when Watkins first came to Fulton. Witness states that Griffin, one of the obligors in the note, was present frequently at these conversations.

Thomas Curd thinks he saw Watkins stick up on Henderson's brick store a printed notice, having very much the appearance both of character of print and color of paper as the one shown witness. He read it and as he now remembers this is to the same purport as that. He states that Watkins tried to sell witness a churn for some county. Defendants offered to prove by this witness that at that time, Watkins had in possession and showed to witness printed notices just like the one now shown witness. Plaintiff objected because it would be evidence irrelevant and illegal and ought not to go to the jury; but the objection was overruled and the evidence was given, to which the plaintiff excepted.

David McKee saw a printed notice sticking up. He tried a churn got of Dyer, with cream but got no butter—he tried it with new milk but got no butter. In a common churn he made butter from both the cream and new milk.

David G. Henderson had read a printed notice of the atmospheric churn. He got a churn of

Dyer, and with cream in good order made a sort of butter in twenty minutes—tried it again but got no butter. The milk in a cedar churn made butter. The butter made by the atmospheric churn was not a merchantable article.

James H. Jamison had some cream churned in an atmospheric churn got of Dyer; it was churned an half hour, when some butter, not as good as made by a common churn was got.

This was all the evidence given by the parties. Plaintiff asked the court to instruct the jury as follows:

1. Before the jury can find for defendants, they must find that said Watkins, before or at the time of the sale of Lewis & Johnson's atmospheric churn for. the county of Boone, was made to said defendants, James and John McClanahan, made the representations stated in defendant's answer, with regard to the said churn, to said defendants, and that the defendants, relying upon these representations, made the purchase, and that such purchase was the consideration of this note.

2. That if the jury find that said Lewis & Johnson's atmostpheric churn, for the county of Boone was of any value, they must find for plaintiff; and if they find for plaintiff they must find for the full amount of the note.

3. That if the jury find the said churn to be of any value, they have no power to fix what they might think to be the value of the same, but must find for plaintiff the whole amount due on said note.

The court gave the first instruction, but refused to give the second and third; to which opinion of the court in refusing to give the second and third instructions the plaintiff excepted. The jury found for defendants and the plaintiff moved for a new trial, which being overruled, the case is brought to this court by writ of error.

## HARDIN & REED, for plaintiff in error.

1. It was error in the court to permit the bill of sale to be read to the jury as evidence, before it was sufficiently shown what persons composed the firm of John McClanahan & Co., to whom it was executed. This was not done, nor was it attempted. It was necessary for defendants to prove strictly that they were partners composing the firm described. 2 Stark. 801; 7 Mo. Rep. 561, Lockridge vs. Pilcher and Wilson.

2. The court committed error in permitting the printed notice to be read to the jury as evidence, and in permitting witness Parker to testify as to what he heard Watkins represent the qualities of the churn to be at the various times spoken of by the witness.

3. The contents of printed notices stuck up in the town and of those seen in the possession of Watkins, ought not to have been given to the jury, until the proper foundation had oeen laid. 1 Phil. Ev. 452; 3 Phil. Ev. 1207 and 1214; 1 Stark. 317.

4. The 2nd and 3rd instructions of plaintiff, ought to have been given by the court.

5. A new trial ought to have been granted to plaintiff.

## ANSELL, for defendants in error.

1. If the fraud or breach of warranty goes to the entire consideration, it may be plead or given in evidence in bar to an action for the purchase money of an article sold. Ferguson vs. Huston, 6 Mo. R. 414.

2. Fraud or partial failure of consideration may be given in evidence in a suit for the purchase money of an article sold, in mitigation of damages to avoid circuity of action. 15 Johns. R. 230, Still vs. Rood; 13 Johns. R. 302, Beeker vs. Vrooman; 8 Cowen, 31, Hills vs. Bannister; 2 Wend. 431, Spalding vs. Vandercook; 3 Wend. 236, Benton vs. Stewart; 4 Wend. 483, McAllister vs. Reab; 22 Pick. 510, Harrington vs. Stratton; 6 Mo. R. 414, Ferguson vs. Huston; 7 Mo. R. 510, Wade vs. Scott; Story on contracts, page 107, sec. 171 to 176; Story's Eq. Fraud, sec. 191 to 195.

NAPTON, J., delivered the opinion of the court.

The principal error assigned in this case is the refusal of the court to give the two last instructions asked by the plaintiff.

This action was upon a note given in consideration of the purchase of a patent right for atmospheric churns, and the defendants attempted on the trial to satisfy the jury that this patent right was valueless. No instructions were asked by the defendants and none were given, except the one asked by the plaintiff, and to which, of course, no objections can now be taken. In the present condition of the case, with a verdict for the defendants found under an instruction given at the instance of the plaintiff, the second and third instructions asked by the plaintiff would seem to be mere abstractions. The jury by their verdict have determined that the atmospheric churn was of no value; it becomes a mere abstraction to enquire now what the law would be, in the event that the patent churn was found to be of some value. It is, in other words, useless to enquire whether a partial failure of a note is a good defence at law to an action upon the note, since the jury have in this case, under an instruction asked by the plaintiff, found a total failure. The plaintiff desired the court to instruct the jury that they must find a general verdict for the defendants, or for the plaintiff, and that they could not take note of any mere partial failure in the consideration of the note. The court refused to give such instructions, but the jury have found generally for the defendants. If therefore the instructions asked by the plaintiff were the law, of what avail could they have been to him, since the jury by their verdict have negatived the hypothesis upon which those instructions were based?

Objections were taken to all the testimony introduced at the trial by the defendants, for the purpose of proving the consideration of the note, and the failure, total or partial, of that consideration. None of these objections seem to be relied on here, except the one made to the introduction of the bill of sale from Watkins to McClanahan & Co. The objection to this paper was that no proof was offered previously to its introduction, to show that the makers of the note sued on constituted the firm of John McClanahan & Co., to whom the bill of sale was made. We cannot perceive the force of this objection. The suit was not upon this bill of sale, it was a mere collateral paper, introduced for the purpose of explaining the transaction which led to the note, which was the subject of the suit. The objection goes to the sufficiency of the proof, not to its competency or relevancy, and this was for the jury. The other judges concurring, the judgment of the circuit court is affirmed.